**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ZAY TOON INC.**, on behalf itself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>**GRUBHUB HOLDINGS INC.**,<br><br>      Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Zay Toon, Inc. ("Plaintiff"), by and through its undersigned counsel, bring this class action on behalf of itself and a proposed class of all others similarly situated, against Defendant Grubhub Holdings Inc. ("Grubhub"). Plaintiff makes the following allegations based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation undertaken by its counsel of the contracts at issue, Grubhub financial records, public records, Grubhub's filings with the Securities and Exchange Commission ("SEC"), communications with Grubhub, and online postings and articles.

## I.    <u>NATURE OF THE CASE</u>

1.    For at least nine years, if not longer, Grubhub has been withholding payments owed to restaurants by improperly deducting "commissions" for sham telephone food orders, depriving more than 300,000 restaurants of revenues and profits that rightfully belong to them.

2.    While Grubhub boasts that it is "the leading online and mobile platform" for restaurant takeout orders and brags that by using the platform "diners do not need to place their orders over the phone," Grubhub has nevertheless been charging restaurants commissions on

telephone calls placed, regardless of whether those calls were actually made to place orders for takeout. Grubhub has done this, even though the restaurants—not Grubhub—take the telephone orders, process them, and prepare the food.

3.  Moreover, Grubhub charges these commissions without verifying whether the calls generated actual food orders and instead relies solely on the length of the call to justify its withholding of revenues and profits that belong to the restaurants.

4.  In fact, Grubhub has admitted that restaurants "may have been incorrectly charged" for these sham telephone orders.

5.  Grubhub's wrongful conduct includes: (1) failing to disclose in its standard form contracts that Grubhub does not take telephone orders and that instead it creates a new telephone number for each restaurant that is advertised on Grubhub's website that, when dialed, redirects the call to the restaurant itself and records the call; (2) misrepresenting that commissions will only be charged on actual food and beverage orders; (3) failing to disclose in its standard form contracts Grubhub's method, if any, for determining which phone calls generate actual food and beverage orders; (4) failing to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them; and (5) misrepresenting that commissions are being charged for orders placed through GrubHub.com and generated by Grubhub.

6.  Grubhub's actions, and failure to act when required, have caused Plaintiff and tens of thousands of other restaurants across the country to suffer harm, including but not limited to lost profits in the tens of millions of dollars over the past nine years.

7.  Plaintiff seeks to remedy these harms and prevent their future occurrence, individually and on behalf of themselves and a proposed class of all other similarly situated

consumers who were wrongfully charged for telephone orders by Grubhub. Plaintiff asserts claims for themselves and on behalf of a nationwide class of consumers for Grubhub's (1) breach of contract, (2) conversion, (3) violations of the Nevada Deceptive Trade Practices Act; and (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

8.     Plaintiff seeks to recover, for itself and a proposed class of all others similarly situated, actual and statutory damages, injunctive relief, restitution, disgorgement, costs, and reasonable attorneys' fees.

## II.     <u>JURISDICTION AND VENUE</u>

9.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more members of the Class; (ii) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (iii) at least one member of the Class is a citizen of a State different from Grubhub.

10.     This Court has personal jurisdiction over Grubhub because Grubhub is authorized to do business and regularly conducts business throughout the United States, including Illinois.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Grubhub is located in and regularly conducts its business from this District and Grubhub's misconduct emanating from this District caused the harm alleged herein, and Grubhub is, therefore, subject to personal jurisdiction in this District.

## III.     <u>THE PARTIES</u>

12.     Zay Toon, Inc. is a Nevada Corporation that owns and operates restaurant, Zaytoon Restaurant & Market, located at 3655 S. Durango Drive, Las Vegas, Nevada, 89147. Plaintiff was injured as a result of Grubhub's conduct described herein.

13.     Grubhub Holdings Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3166 N Lincoln Avenue, Chicago, Illinois 60657.

## IV.     FACTUAL BACKGROUND

### A.     Grubhub's Business Model And Ordering Platform

14.     Grubhub considers itself to be "the leading online and mobile platform for restaurant pick-up and delivery orders, which the Company refers to as takeout."  Grubhub's Form 10-K, dated February 28, 2020, at 3 [hereinafter, "2020 Form 10-K"].[1]

15.     Grubhub uses its platform to connect more than 300,000 restaurants with diners in "thousands" of cities across the United States. *Id.*

16.     Grubhub contends that its "platform empowers diners with a 'direct line' into the kitchen, avoiding the inefficiencies, inaccuracies and frustrations associated with paper menus and ***phone orders***." *Id.* (emphasis added).

#### 1.     Grubhub's Service To Diners

17.     With respect to diners, Grubhub contends that it "provides diners . . . with an easy-to-use, intuitive and personalized interface that helps them search for and discover local restaurants and then accurately and efficiently place an order." *Id.*

18.     Grubhub's platform helps diners search for and locate local restaurants and place food orders with those restaurants "from any internet-connected device." *Id.* Grubhub "generates revenues primarily when diners place an order on its platform." *Id.* Indeed, the number of diners using Grubhub's platform "is a key revenue driver." *Id.* at 29.

---

[1]   Grubhub's Form 10-K, dated February 28, 2020, is incorporated by reference as if fully set forth herein.

19.     Simply put, a hungry diner visits Grubhub's ordering platform—either the website or the mobile app—and searches for restaurants according to various parameters, such as type of food or location.  The diner can then browse restaurants' menus and place an order for takeout via Grubhub's platform.  Grubhub processes the order and transmits it to the restaurant to be fulfilled.  The restaurant prepares the food and delivers it to the diner, though Grubhub offers delivery services as well.

20.     Grubhub boasts that by using the platform, "diners do not need to place their orders over the phone" which allows diners to order food "without having to talk to a distracted order-taker in an already error-prone process."  *Id.* at 5.

21. Grubhub claimed to have 22.6 million "active diners" as of December 31, 2019, and more than 492,300 "Daily Average Grubs."  *Id.*

### 2.     Grubhub's Service To Restaurants

22.     For restaurants, Grubhub contends that it provides them "with more orders, helps them serve diners better, facilitates delivery logistics in many markets, and enables them to improve the efficiency of their takeout business."  *Id.* at 4-5.

23.     Diners use Grubhub's platform to place takeout orders with restaurants that have enlisted Grubhub's services. In turn, restaurants pay a commission on food orders that are processed through Grubhub's platform.  *Id.* at 3.  Grubhub contends that it "only gets paid for the orders the Company generates . . . providing restaurants with a low-risk, high-return solution."  *Id.*

24.     The commissions can vary by restaurant but are "typically a percentage" of each transaction, ranging from 10% to 20% of each order.  To increase their prominence and exposure

to diners on Grubhub's platform, restaurants can opt to pay a higher commission rate. *See id.* at 4-5.

25.     Although Grubhub primarily markets its online and mobile platforms, it also charges commissions on food orders taken over the telephone. Grubhub contracts, however, require that an actual food order must be placed through Grubhub's platforms for any commission obligation to arise.

26.     In reality, there is no Grubhub telephone food ordering system. As set forth more fully below, Grubhub creates a local telephone number for each restaurant and advertises that number on the restaurant's microsite on the Grubhub platform.  When a diner uses that telephone number to place a food order (as opposed to ordering on Grubhub's online or mobile platforms), the diner's call is rerouted to the restaurant itself, and Grubhub does not interface with the diner at all. In fact, Grubhub does not play any role in the processing of telephone food orders. Moreover, because the restaurant, rather than Grubhub, handles the telephone calls, Grubhub does not know whether the call actually results in a food order or whether it was another type of phone call. Because Grubhub is not privy to these phone calls as they are taking place, Grubhub simply assumes that any conversation longer than 45 seconds is a food order and charges a commission without verifying whether an order for food was actually placed.

27.     Diners typically pay for their meals via credit card. *See* 2020 Form 10-K. After a diner places an order on Grubhub's online or mobile platform, Grubhub "collects the total amount of the diner's order net of payment processing fees from the payment processor and remits the net proceeds to the restaurant less [Grubhub's] commission and other fees." *Id.* Grubhub "also deducts commissions for other transactions that go through its platform, such as cash transactions for restaurant partners, from the aggregate proceeds received."  *Id.*  Grubhub

then "accumulates" these funds and "remits the net proceeds to the restaurants on at least a monthly basis." *Id.*

28.     For the calendar year ending December 31, 2019, Grubhub served more than 300,000 restaurants and generated $1.3 billion in revenue. *Id.* at 8, 31.

### B.     Grubhub Creates Misleading Telephone Numbers Taking Advantage Of Unsuspecting Restaurants

29.     Grubhub touts that it "offers a more targeted marketing opportunity than the yellow pages, billboards or other local advertising mediums since diners typically access the Company's [p]latform when they are looking to place a takeout order[.]" *Id.* at 8.

30.     As part of its marketing services to restaurants, Grubhub creates and has sole editorial control over a restaurant's microsite on the Grubhub platform. While the restaurant provides restaurant-specific content that includes menus, photos, trademarks, and logos, Grubhub ultimately controls how the restaurant's content is presented on the Grubhub platform. *Id.*

31.     Unbeknownst to many of its restaurant customers, however, Grubhub also creates its own content for restaurants' microsites on Grubhub's platform. Specifically, Grubhub generates a local telephone number for each restaurant and lists that phone number on the restaurant's Grubhub microsite. For the most part, restaurants are unaware that Grubhub is not advertising their actual phone numbers or that it instead promotes these Grubhub-issued local telephone numbers.

32.     Likewise, many diners are unaware that they are calling a Grubhub-issued local telephone number. Because the Grubhub-issued telephone numbers are local telephone numbers, diners searching for restaurants believe that the phone numbers they see on Grubhub's platform are the actual telephone numbers for the restaurants. They are not.

33.     One of Grubhub's founders, Mike Evans, explains:



Quora, *available at* https://www.quora.com/How-does-GrubHub-monitor-orders-and-accordingly-charge-fees-to-the-restaurants-when-the-diner-directly-phones-in-the-restaurant-using-the-restaurants-phone-number-appearing-on-its-GrubHub-page (last visited Dec. 31, 2018).

34.     In addition, some diners may use these Grubhub-issued telephone numbers without even intending to place an order via Grubhub's platform. For example, if a diner uses a search engine like Google to search for a specific restaurant, that diner will invariably click onto the restaurant's Grubhub microsite landing page, as Grubhub has secured primary placement with all popular search engines—as a result of its massive market power. Typically, a restaurant's microsite on Grubhub is the first search result that appears, even above the restaurant's own website. After landing on the Grubhub page, the diner may then dial the telephone number advertised there, mistakenly believing that he/she is contacting the restaurant

directly. Instead, Grubhub diverts these calls to the restaurants and records the calls, not having contributed in any way to the transaction.

35.     Likewise, restaurants are unaware that they are receiving a telephone food order diverted to them from a Grubhub-issued local telephone number masquerading as the local restaurants' phone numbers on Grubhub microsites. They are received and sound no different than a direct call from a diner using the restaurant's own number.

**C.      Grubhub Impermissibly Charges Commissions For Telephone Calls That Do Not Generate Food Orders**

36.     As set forth above, Grubhub creates its own local phone number for each restaurant in order to "track the calls and bill accordingly."  When diners use those numbers, those calls are then diverted to the restaurant and recorded.

37.     With respect to the telephonic food orders, the restaurants do all of the work: they take the phone order; they process the order; they prepare the food; and they deliver it. Grubhub plays no role in the process. As described above, Grubhub is often not even providing "marketing services" to restaurants relating to these transactions, instead insidiously diverting diners from the restaurants' own websites to Grubhub's microsites.

38.     Moreover, because Grubhub is not involved in the food orders placed over the phone, and therefore lacks knowledge about the amount of the transaction (if any), it charges the restaurants a commission based not upon the total of the "phone order" but upon the average commissions charged to the restaurant—a "monthly fee average as determined from month to month."

39.     Even though Grubhub records the calls that are placed via the Grubhub-issued phone numbers, Grubhub does not listen to those recordings to verify that the calls are actually

calls to place food orders. Instead, Grubhub merely assumes which calls are food orders—as opposed to other types of calls—based upon the length of the call.

40.    Grubhub has acknowledged that it does not verify which calls are for food orders. In 2013, when asked how Grubhub differentiates between phone calls generating food orders and other types of calls, Grubhub's founder explained:

> GrubHub (product)
>
> ## GrubHub: How does grub hub differentiate between phone calls for delivery and phone calls for inquiry?
>
> Ad by Zoho
> **Run your entire business with Zoho One.**
> Reach customers, grow sales, balance your books and work in collaboration from any device.
>
> Sign up at zoho.com
>
> 1 Answer
>
>  Mike Evans, Founder at GrubHub
> Answered May 20, 2013 · Upvoted by Casey Winters, worked at GrubHub · Author has **68** answers and **262.3k**
>
> There are a few key indicators that tell if a call is an order or not. Among them are time of call (during business hours), duration of call, exclusion of multiple call from same number, etc. It turns out to be possible to predict with a high degree of accuracy which calls are orders or not. Once that's done, a simple statistical model using standard deviations can be built to ensure that less orders are charged than actually completed.
>
> Phone orders aren't added to user's history as they can't be accurately matched with a high enough degree of confidence.
>
> 1.6k Views · View Upvoters · Answer requested by Natalie Frunze

Quora,    *available    at*    https://www.quora.com/GrubHub-How-does-grub-hub-differentiate-between-phone-calls-for-delivery-and-phone-calls-for-inquiry (last visited Dec. 31, 2018).

41.    More recently, a Grubhub representative explained that Grubhub's "algorithm determines whether a call results in an order; the length of the call is one factor that goes into that determination. The review system is in place so that if our algorithm makes a mistake, we

can rectify that with the restaurant." Tribeca Citizen, *Why Restaurants Hate GrubHub Seamless*, https://tribecacitizen.com/2016/03/01/why-restaurants-hate-grubhub-seamless/ (last visited Dec. 3, 2020).

42.     For at least six years, however, the length of the call was the **only** factor that Grubhub considered when determining whether a call is a food order or not. Indeed, as set forth more fully below, a Grubhub account advisor made clear that Grubhub automatically charges a telephone commission for any phone call that exceeds *forty-five seconds* in length—regardless of whether that call is to place a food order or not. In fact, most telephone calls are not food orders.

43.     Thus, Grubhub has been unlawfully charging commissions and withholding restaurants' receivables under the guise that Grubhub generated food orders by telephone. To the contrary, Grubhub merely diverted web traffic from the restaurant's website, created and listed a local telephone number for the restaurant, rerouted diners' calls to the restaurant, and played no part in taking, processing, or delivering the order—if one was even made.

44.     Grubhub claimed that restaurants had access to all telephone recordings, but in reality, no restaurant had any access to a single telephone recording because Grubhub had universally disabled such access in an effort to conceal Grubhub's unlawful business practice. Moreover, one of Grubhub's account advisors acknowledged that without these recordings, restaurant orders cannot review the calls and audit them to determine which calls actually generated food orders.

     **D.**    **<u>Plaintiff's Experiences With Grubhub and Sham Telephone Orders</u>**

          **1.**    **Plaintiff's Relationship with Grubhub**

45.     Saam Naghdi ("Naghdi") owns Zay Toon, Inc. ("Plaintiff"), which owns and operates Zaytoon Restaurant & Market in Las Vegas, Nevada.

46.    Plaintiff's restaurant first contracted with Yelp's Eat24.com LLC ("Eat24") in 2011.

47.    Eat24 was an online food ordering service that offered services to restaurants and diners substantially similar to those offered by Grubhub.

48.    Plaintiff is no longer in possession of a copy of its contract with Eat24.

49.    As part of its contract with Eat24, Plaintiff agreed to pay a 12.5% commission on each order placed to its restaurant through Eat24's online ordering system.

50.    Upon information and belief, Plaintiff's contract with Eat24 did not permit the imposition of a commission or fee for telephone orders *taken by and placed with the restaurant itself*.

51.    Nor did the Eat24 contract contain an arbitration provision.

52.    Eat24 was acquired by Grubhub in or around October 2017.

53.    When Grubhub acquired Eat24 from Yelp, Grubhub did not send nor ask Plaintiff to execute a Grubhub contract. Grubhub assumed Eat24's relationship with Plaintiff and continued to charge the same commission rate on orders placed through the platform. Grubhub's Eat24 conversion FAQs state that Eat24 restaurants are still subject to the "existing agreement with Eat24."

54.    When Plaintiff requested a copy of the contract with Grubhub, Grubhub informed Plaintiff none of the Eat24 restaurants were provided contracts when on-boarded, nor was Grubhub in possession of Plaintiff's contract with Eat24.

55.    At no point did Grubhub advise Plaintiff or any of its representatives that it would create a local phone number for its restaurant and advertise that numbers on the restaurant's Grubhub microsite.

56. For example, Plaintiff's restaurant's actual phone number is (702) 685-1875, yet the Grubhub landing page for this restaurant listed the Grubhub-issued phone number.

57. Consistent with Grubhub's practices, when diners visited the Grubhub page and used this number to call to place a food order over the telephone, the call was redirected to Plaintiff's restaurant. There, Plaintiff's staff members took and processed the order. Grubhub did nothing.

58. Again, diners who ended up on Grubhub's page used this number to place food orders over the telephone. Grubhub merely forwarded those calls to Plaintiff, where the restaurant staff do all of the work to both take the order and prepare it.

59. However, diners who ended up on Grubhub's page also used this number to call Plaintiff's restaurant for informational and customer services purposes.

60. Grubhub charged a commission on these telephone food orders and informational calls lasting over 45 seconds, even though it does ***nothing*** to generate them.

61. In addition, when a diner ends up on Grubhub's page and saves the Grubhub-issued-number to his or her phone to contact the restaurant in the future, Grubhub charges a commission on that diner's telephone food orders and informational calls lasting over 45 seconds, even though the customer did not even visit Grubhub's website to initiate that call or choose the restaurant for ordering that day.

62. After discovering Grubhub's telephone order commission scheme, as described below, Plaintiff ended its relationship with Grubhub in or around February 2020.

63. After Plaintiff ended its relationship with Grubhub, several customers reported that they believed Plaintiff's restaurant had closed because the number they had saved in their phones as Plaintiff's number (*i.e.,* the Grubhub-issued number) was disconnected. Thus,

Grubhub continued to interfere with Plaintiff's business even after the relationship between them had been terminated.

### 2. Plaintiff Discovers Grubhub's Scheme

64.     On December 31, 2018, a case captioned *Tiffin EPS, LLC et al v. Grubhub Inc.*, was filed in the United States District Court for the Eastern District of Pennsylvania at docket no. 2:18-cv-05630. The plaintiff in that case challenged the same telephone order commission scheme that Plaintiff seeks to remedy here.

65.     Naghdi became aware of that case, and the telephone order commission scheme it described, through various news coverage.

66.     Neither Naghdi nor any other representative of Plaintiff was aware of Grubhub's telephone order commission scheme until that time.

67.     As described in the complaint in *Tiffin EPS, LLC*, after a representative of the plaintiffs became aware of Grubhub's telephone order commission scheme, he tested Grubhub's system and soon found "that any call over a certain amount of time was automatically treated like an actual food order on the Grubhub ledger for the restaurant. For example, he dialed the Grubhub-issued phone number, had the restaurant place the call on hold for 2 minutes, and then hang up. Just minutes later, this call had been recorded by Grubhub as a legitimate food order for which a commission was assessed." (ECF No. 1) The representative also found that a call in which a customer asked questions about the plaintiff's menu was charged a commission by Grubhub, as was the food order the customer placed on Grubhub.com shortly thereafter. *Id.*

68.     When the *Tiffin EPS, LLC* plaintiffs sought to listen to Grubhub's recordings of these supposed "telephone orders", they were initially unable to. *Id.*

69.     By intentionally disabling the restaurants' ability to listen to these recordings, Grubhub was able to conceal that: (1) it had no role in placement of food orders over the

14

telephone; and (2) Grubhub was charging restaurants commissions on any telephone call over 45 seconds regardless of whether or not a food order was placed.

70.     Following a campaign of communications with Grubhub to gain access to Grubhub's recordings, the *Tiffin EPS, LLC* plaintiffs were ultimately able to listen to the "telephone orders" they had received. *Id.* The following are transcripts of calls made to the *Tiffin EPS, LLC* plaintiffs' restaurants via the Grubhub-issued numbers that exceeded 45 seconds in length and were, thus, all charged as food orders, though—quite clearly—none of them were.

| | |
|---|---|
| August 20, 2018, 5:45pm: | Hi, um I just placed an order through Grubhub but I didn't get a confirmation text or email but I just wanted to make sure it went through. |
| August 21, 2018, 8:05pm: | Hi. I ordered a delivery to Manton Street like, an hour and twenty minutes ago, and it's still not here. |
| August 24, 2018, 8:15pm: | Hi. I'm ordering off of Grubhub and I was wondering if you guys had tofu. Do you carry tofu? |
| August 31, 2018, 11:20am: | Hi. Is this Tiffin? Okay, I just wanted to know what time you guys started – start to, um, do delivery. |
| September 3, 2018, 3:55pm: | Yeah, I have a question. You guys are delivering through Grubhub, right? On your menu, do you have any hummus? Do you make hummus there? |
| September 9, 2018, 5:20pm: | Hi. We're . . . placing an order on Grubhub and wanted to know if the curries comes with rice or if that's separate. |
| September 12, 2018, 5:00pm: | Yes, um, are you guys non-vedge and vedge? Do you have non-vedge as well? Okay, I just wanted to…See, I'm a vegetarian, so I wanted to make sure, you know, the |

> cooking is okay. So do you guy –
> does the chef cook separately or use
> separate containers?

*Id.*

71.     These recordings are fair representations of the types of calls that the restaurants usually receive. In fact, diners primarily call the restaurants to check on the status of their delivery orders or to ask questions about the menu. As such, Grubhub is likely double-charging commission to restaurants with respect to many of these calls, one commission for an order actually placed via its platforms and a second commission for an informational call to the restaurant regarding the order and/or restaurant.

72.     These recordings also showed that Grubhub charged phony telephone commissions to restaurants on the basis of telephone calls that exceeded 45 seconds despite that they did not result in food orders.

73.     Given the primary placement of Grubhub's restaurant pages with popular search engines and the frequency with which diners place non-food-order calls, the amount of false food order fees charged by Grubhub is likely substantial.

74. On December 9, 2019, the plaintiffs in *Tiffin EPS, LLC et al v. Grubhub Inc.* were ordered to arbitration based on the Tiffin plaintiffs 2011 contacts. Although these contracts themselves did not contain nor incorporate an arbitration clause, they were erroneously ordered to arbitrate their claims. (ECF No. 46). As such, Plaintiff—and hundreds of thousands of restaurants like it—continued and continue to be injured by Grubhub's fraudulent telephone order commission scheme.

75. Upon information and belief, neither Plaintiff's contract with Eat24 nor other restaurant's contracts with Eat24 contained an arbitration clause. Plaintiff has never agreed to arbitrate this or any other dispute with Grubhub.

**E.** **Other Restaurants' Experiences With Grubhub And Charges For Sham Telephone Orders**

76.     Grubhub provides its services to over 300,000 restaurants across the country, it and imposes commissions for sham telephone orders on other restaurants as well.

77.     For example, in 2016, an anonymous restaurateur in New York complained that Grubhub "charge[s] us a minimum of $3 for any call under 30 seconds.  If the call is longer, the fee can be up to $7." Tribeca Citizen, *Why Restaurants Hate GrubHub Seamless*, https://tribecacitizen.com/2016/03/01/why-restaurants-hate-grubhub-seamless/ (last visited Dec. 3, 2020).

78.     More recently, another New York restaurant owner voiced similar allegations, complaining that "the site never show[ed] our real number to contact, and if someone called us from their website, Grubhub will charge us 3$ for phone order no matter what that phone call is about." Medium, *Why my restaurant stop doing delivery through Seamless/Grubhub/Eat24*, https://medium.com/@mynguyen_66342/why-my-restaurant-stop-doing-delivery-through-seamless-grubhub-eat24-47f3ab83c332 (last visited Dec. 3, 2020).

**F.** **Grubhub Fraudulently Concealed Its Telephone Scheme**

79.     Grubhub went to extraordinary lengths to conceal its telephone scheme.

80.     For example, when diners dial the GH number, the recording says: "[t]his call may be recorded for awesomeness." There is no mention of Grubhub.

81.     When restaurant employees answer rerouted calls, the employees do not know that these calls are coming from Grubhub. Worse yet, restaurant employees do not know that Grubhub is recording these telephone calls, nor have these employees been asked to consent to such recordings. Indeed, Grubhub's practice of recording telephone calls without first notifying

and/or seeking consent from the restaurant employee participating on the call being recording is illegal in at least eleven states across the country, ***including Illinois*** -- where Grubhub is based.

**G. Grubhub's Telephone Scheme Was Designed To Confuse and Interfere with Existing Restaurant-Diner Relationships**

82. In 2019, Grubhub's former Head of Innovation Collin Wallace admitted that Grubhub was sowing confusion and interfering with existing restaurant clientele through its scheme. Wallace verified statements in an article that explained how Grubhub used Google, Yelp, and other search engines to post sham phone numbers so that diners seeking to order from restaurant directly are unknowingly ordering through Grubhub:

> **Google Hijacking and Fake Phone Numbers**
>
> Tricking businesses onto your platform and creating additional headaches for small business owners in the pursuit of Softbankian growth is a bad as it gets. Many restauranteurs were complaining about their Google listings being "hijacked" by Doordash, sometimes even usurping their own preferred delivery.
>
> These underhanded tricks aren't unique to Doordash though. In recent weeks there been some great work coming out around a Yelp - Grubhub phone scam. This one is just priceless (seriously, read this Buzzfeed piece). Grubhub for their own sites generates a phone number for each restaurant that goes to a centralized, Grubhub owned call center. If someone calls in and orders via this number, the restaurant gets charged a fee. Apparently, some enterprising BD folks came up with the idea that Yelp could put the Grubhub phone numbers in place of the real restaurant phone number on the Yelp listing. Customers who think they're "helping" their local restaurants by calling in the order are still creating a fee for Grubhub.

83. Wallace also acknowledged Grubhub's goal of charging restaurants to access their *own customers,* stating:

> In the case of restaurants, these platforms slowly siphon off your customers and then charge you to have access to them. They are simultaneously selling these same customers to your competitor across the street, but, don't worry, they are also selling their customers to you.

84. Thus, as a former Grubhub executive admitted, Grubhub's telephone practice was designed to create confusion and lead restaurants and diners to believe that they are dealing with one another directly when, in reality, Grubhub was quietly inserting itself into these transactions and taking credit and commission where neither was due.

## V. GRUBHUB'S ACTS RELEVANT TO THE CLAIMS ASSERTED HEREIN EMANATED FROM ILLINOIS

85.    All of the conduct by Grubhub as alleged herein and all of the relevant transactions and all of the deceptive conduct emanated, occurred and was perpetrated primarily and substantially from Illinois.

86.    Grubhub's principal place of business and headquarters is in Illinois.

87.    Grubhub and its employees and executives, including Grubhub cofounder Mike Evans, conceived, designed, approved and implemented the scheme alleged herein from Illinois.

88.    All of the improper commissions withheld from Plaintiff were calculated in Illinois based on policies conceived of and implemented in Illinois and all remittances from which the improper commissions were withheld were paid from Illinois-based accounts.

89.    Grubhub routinely includes Illinois choice of law provisions in its various contracts.

90.    Grubhub's executives work from Illinois, as do the vast majority of its operations personnel (programing, coding, accounting, etc.). For example, communications to Plaintiff, from Grubhub's Lass Vegas and Reno NV Account Manager, Ethan Charny, list an Illinois address and (312) telephone number for Mr. Charny.

91.    Upon information and belief, substantial relevant activities related to the creation of the telephone numbers at issue and the collection of revenue in connection therewith emanated from Illinois. For example, the Senior Vice President of Marketing who approved oversaw and then later defended the scheme in regulatory hearings that took place in New York, is based in Chicago. The Director of Restaurant Success who enabled the scheme is based in Illinois. The product management and engineering department responsible for the faulty algorithm operates out of Illinois.  The market, accounting, and customer service departments operate out of Illinois.

19

92.     Grubhub's accounting statements to restaurants listing the improper commissions challenged herein list Grubhub's Illinois address.

93.     Thus, Illinois is at the center of the misconduct as nearly every major function from inception, design, implementation, execution and concealment, took place or stemmed from Grubhub's corporate office in Chicago, Illinois.

## VI.     CLASS ACTION ALLEGATIONS

94.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings its claims against Grubhub for breach of contract, conversion, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "**Illinois Act**") and, in the alternative, violations of the Nevada Deceptive Trade Practices Act (the "**Nevada Act**"), on behalf of themselves and the following "**Class**" and "**Subclass**" (collectively "Class") defined as follows:

> **Class**: All restaurants in the United States who were improperly charged a commission by Grubhub for a telephone food order.
>
> **Subclass**: All restaurants in the United States who were improperly charged a commission by Grubhub for a telephone food order and do not have a valid, enforceable arbitration agreement with Grubhub.

95.     Grubhub, its officers and directors, as well as the judge to whom this case is assigned are excluded from the Class.

96.     The Class consists of hundreds of thousands, if not millions, of individuals, making joinder impractical, in satisfaction of Fed. R. Civ. P. 23(a)(1).  The exact size of the Class and the identities of the individual members thereof are ascertainable through Grubhub's records.

97.     The claims of Plaintiff are typical of the claims of the other Class members. Plaintiff's claims and those of the Class members are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and the Class members.

98.     The respective class has a well-defined community of interest.  Grubhub has acted, and failed to act, on grounds generally applicable to Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

99.     There are many questions of law and fact common to the claims of Plaintiff and of the other Class members, and those questions predominate over any questions that may affect only individual Class members. Common questions of fact and law affecting members of the Class that predominate over any individualized questions include, but are not limited to, the following:

a)   Whether Grubhub breached its contracts with Plaintiff and the other Class members by charging commissions for sham telephone orders that did not actually result in food and beverage orders;

b)   Whether Grubhub converted proceeds belonging to Plaintiff and the other Class members when it withheld those funds as commissions for sham telephone orders that did not actually result in food and beverage orders;

c)   Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose in its standard form contracts with Plaintiff and the other Class members that Grubhub would create entirely new phone numbers that it would use to advertise on the Grubhub microsite and to track phone orders to the restaurants;

d)   Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it misrepresented to Plaintiff and the other Class members that commissions would only be charged on actual food and beverage orders;

e) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose in its standard form contract Grubhub's "algorithm" for determining which phone calls generate actual food and beverage orders;

f) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it failed to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them;

g) Whether Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it purposefully disabled restaurants' ability to listen to telephone recordings and whether by disabling these recordings Grubhub sought to intentionally conceal its illegal telephone ordering scheme;

h) Whether, in some instances, Grubhub engaged in unconscionable, unfair, and/or deceptive acts or practices when it misrepresented that commissions would only be charged for orders placed through GrubHub.com and failed to disclose that commissions would be charged for telephone orders as well;

i) Whether Grubhub's conduct renders it liable for breach of contract, conversion, violations of the Illinois Act;

j) Whether, as a result of Grubhub's conduct, Plaintiff and the other Class members have been injured, and, if so, the appropriate measure of damages to which they are entitled; and

k) Whether, as a result of Grubhub's conduct, Plaintiff and the other Class members are entitled to injunctive, equitable and/or other relief, and, if so, the nature of such relief.

100.     Absent the certification of a class, most of the Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

101.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The aforementioned common questions of law and fact predominate over any questions affecting individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

102.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(a) and (b)(2), because Grubhub has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

103.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff have retained counsel with substantial experience in prosecuting complex commercial litigation and class actions. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor their counsel have any interests adverse to those of the other Class members.

## VII.    LEGAL CLAIMS

### COUNT I – BREACH OF CONTRACT

104.     Plaintiff repeats and realleges each and every factual allegation set forth above, as if fully set forth herein.

23

105.    Plaintiff and the other Class members entered into contracts with Grubhub to use Grubhub's platform and advertising services to increase takeout orders at their respective restaurants. Relevant here, Plaintiff and the other Class members never agreed to pay a commission or advertising fee for phone calls that did not result in an "order."  An "order" is the "food and beverage subtotal, including delivery fee, placed through GrubHub.com to [the] restaurant."

106.    Plaintiff and the other Class members substantially performed their obligations under their contracts with Grubhub.

107.    Grubhub breached its agreement with Plaintiff and the other Class members by charging commissions for telephone orders that were not placed with Grubhub, but rather with the restaurants themselves. Grubhub breached its agreement with Plaintiff and the other Class members by automatically charging commissions any time that a diner called the restaurants and the call lasted 45 seconds or more, regardless of whether the caller ordered any food or beverage from the restaurant.

108.    Indeed, that Grubhub to charges ***any*** commission for telephone orders, regardless of whether the phone calls generated food and beverage orders, is improper given that the restaurants—not Grubhub—are taking and processing all telephone orders.

109.    Plaintiff and the other Class members have been injured as a direct and proximate result of Grubhub's illegal business practices and breach of its contracts.  Indeed, as a result of Grubhub's wrongful conduct as described herein, Plaintiff and the other Class members have suffered lost profits in the tens of millions of dollars over the past nine years.

## COUNT II – CONVERSION

110. Plaintiff repeats and realleges each and every factual allegation set forth above, as if fully set forth herein.

111. "For most orders, diners use a credit card to pay [Grubhub] for their meal when the order is placed." 2020 Form 10-K, at 3. Grubhub "accumulates" these funds and remits the net proceeds to the restaurants, subtracting Grubhub's commissions and payment processing fees charged by third parties like credit card companies. *Id.*

112. Because Grubhub does not actually process telephone orders, Grubhub does not receive payment for those orders directly from diners. Instead, Grubhub calculates the commissions it believes it is entitled to for telephone orders and simply withholds those proceeds when it remits the net proceeds to the restaurants each month.

113. Upon information and belief, Grubhub "accumulates" these funds in specific accounts from which it remits the net proceeds to the restaurants.

114. Plaintiff and the other Class members have the right to all funds Grubhub has withheld as commissions for the sham telephone orders. Those funds belong to Plaintiff and the other Class members, and they have the right to immediately possess them.

115. By withholding funds as commissions for telephone calls that were not generated by Grubhub or did not result in an actual food order, Grubhub has engaged in the unauthorized and wrongful assumption of control, dominion, and/or ownership over the proceeds that belong to Plaintiff and the other Class members.

116. Moreover, demand would be futile because when other restaurants sued to recoup the improperly withheld telephone commissions, Grubhub did not offer to refund all improperly assessed fees and vigorously fought against their return to restaurants. Grubhub's refusal to address the wrongdoing coupled with its continued misconduct, demonstrate that demand on

behalf of the entire Class would be futile. Moreover, upon information and belief, Grubhub has likely already used these improperly converted funds.

117. Plaintiff and the other Class members have been injured as a direct and proximate result of Grubhub's wrongful assumption of ownership over funds that belong to Plaintiff and the other Class members by withholding such funds as commissions for sham telephone orders. Grubhub's withholding of any proceeds as commissions for any telephone orders was unauthorized. As a result of Grubhub's wrongful conduct as described herein, Plaintiff and the other Class members have suffered lost profits in the tens of millions of dollars over the past nine years.

## COUNT III – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

118. Plaintiff repeats and realleges each and every factual allegation set forth above, as if fully set forth herein.

119. Under the Illinois Act:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

> 815 ILCS 505/2.

120. Grubhub engaged in unfair and deceptive acts and practices in at least the following ways:

a)  Failing to disclose in its standard form contracts with restaurants that Grubhub will create an entirely new phone number that it will use to advertise on the Grubhub microsite and to track phone orders to the restaurant;

b)  Misrepresenting that commissions will only be charged on food and beverage orders placed through Grubhub.com;

c)  Failing to disclose in its standard form contract Grubhub's "algorithm" for determining which phone calls generate actual food and beverage orders;

d)  Failing to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them;

e)  Misrepresenting that Grubhub takes orders by telephone when in reality all phone calls are rerouted and placed by the restaurants themselves; and

f)  Concealing the telephone order sham by intentionally disabling the restaurants' ability to listen to these recordings.

121.  Grubhub intended that Plaintiff and the other Class members would rely upon Grubhub's deception and unfair acts and practices.

122.  Moreover, Grubhub engaged in the aforementioned unfair and deceptive acts and practices during the course of trade and commerce, and GrubHub's business operations and conduct as described herein generally constitute "trade or commerce" as those terms are used throughout the Illinois Consumer Fraud and Deceptive Business Practices Act.  Specifically, Grubhub engaged in deception and unfair acts and practices when it advertised, offered for sale, sold, and distributed its advertising and order-processing services to tens of thousands of restaurants all over the country to increase takeout orders at their places of business.

123.    Plaintiff and the other Class members have been injured as a direct and proximate result of Grubhub's unfair and deceptive acts and practices. In fact, as a result of Grubhub's wrongful conduct as described herein, Plaintiff and the other Class members have suffered lost profits in the tens of millions of dollars over the past nine years.

124.    Nationwide application of the Illinois Act is appropriate since all of the relevant acts, transactions and improper commissions emanated from Illinois, including Grubhub's Illinois headquarters.

## COUNT IV – VIOLATION OF THE NEVADA CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (IN THE ALTERNATIVE)

125.    Plaintiff repeats and realleges each and every factual allegation set forth above, as if fully set forth herein. This Count is pled in the alternative to the extent the Court determines that the Illinois Act does not apply.

126.    Under the Nevada Act:

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she . . . [m]akes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions . . . [or k]nowingly makes any other false representation in a transaction."

127.    Grubhub engaged in unfair and deceptive acts and practices in at least the following ways:

a)  Failing to disclose in its standard form contracts with restaurants that Grubhub will create an entirely new phone number that it will use to advertise on the Grubhub microsite and to track phone orders to the restaurant;

b)  Misrepresenting that commissions will only be charged on food and beverage orders placed through Grubhub.com;

c)  Failing to disclose in its standard form contract Grubhub's "algorithm" for determining which phone calls generate actual food and beverage orders;

d)  Failing to disclose that Grubhub does not undertake any analysis to determine which telephone calls actually result in food and beverage orders before charging commissions for them;

e)  Misrepresenting that Grubhub takes orders by telephone when, in reality, all phone calls are rerouted and placed by the restaurants themselves; and

f)  Concealing the telephone order sham by intentionally disabling the restaurants' ability to listen to these recordings.

128.  Grubhub intended that Plaintiff and the other Class members would rely upon Grubhub's deception and unfair acts and practices.

129.  Moreover, Grubhub engaged in the aforementioned unfair and deceptive acts and practices during the course of trade and commerce. Specifically, Grubhub engaged in deception and unfair acts and practices when it advertised, offered for sale, sold, and distributed its advertising and order-processing services to tens of thousands of restaurants all over the country to increase takeout orders at their places of business.

130.  Plaintiff and the other Class members have been injured as a direct and proximate result of Grubhub's unfair and deceptive acts and practices. In fact, as a result of Grubhub's wrongful conduct as described herein, Plaintiff and the other Class members have suffered lost profits in the tens of millions of dollars over the past nine years.

## VIII.  <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Honorable Court enter judgment in its favor and against Grubhub by:

a) Certifying this action as a class action pursuant to Fed. R. Civ. P. 23; declaring that Plaintiff is a proper class representative; and appointing Plaintiff's attorneys as class counsel;

b) Granting permanent injunctive relief to prohibit Grubhub from continuing to engage in the unlawful acts, omissions, and practices described herein;

c) Awarding Plaintiff and the other Class members compensatory, consequential, and general damages in an amount to be determined at trial;

d) Adjudging and decreeing that the unlawful acts, omissions, and practices described herein constitute breach of contract, conversion, violations of the Nevada Deceptive Trade Practices Act, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act;

e) Awarding treble damages pursuant to the Illinois Consumer Fraud Act and Deceptive Business Practices Act;

f) Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Grubhub as a result of its unlawful acts, omissions, and practices described herein;

g) Awarding statutory, punitive, and exemplary damages to the fullest extent permitted by law;

h) Awarding Plaintiff and the other Class members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

i) Awarding pre- and post-judgment interest at the maximum legal rate; and

j) Granting all such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 23, 2021

By: */s/ Paul D. Malmfeldt*
Paul D. Malmfeldt #6288380
**BLAU & MALMFELDT**
566 West Adams Street, Suite 600
Chicago, Illinois 60661
Tel: (312) 443-1600
Fax: (312) 443-1665
pmalmfeldt@blau-malmfeldt.com

Steven A. Schwartz (*pro hac vice forthcoming*)
Zachary P. Beatty (*pro hac vice forthcoming*)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 W. Lancaster Ave.
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
steveschwartz@chimicles.com
ZPB@chimicles.com

James J. Rosemergy #6257973
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Tele: 314-725-7700
Direct: 314-678-1064
Fax: 314-721-0905
jrosemergy@careydanis.com